Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALI KARIMI,** *individually and on behalf of all others similarly situated*,<br><br>**Plaintiff,**<br><br>v.<br><br>**DEUTSCHE BANK AKTIENGESELLSCHAFT,** *et al.*,<br><br>**Defendants.** | **Civil Action No.: 20-8978 (ES) (JRA)**<br><br>**OPINION** |

SALAS, DISTRICT JUDGE

Before the Court is defendants Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or the "Bank"), John Cryan, Christian Sewing, Marcus Schenck, and James von Moltke's[1] motion to transfer this matter pursuant to 28 U.S.C. 1404(a), or alternatively, to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.E. No. 52).  Having considered the parties' submissions, the Court decides this matter without oral argument.  Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, the motion to transfer venue is GRANTED.  The Court will transfer this matter to the Southern District of New York.

## I.      BACKGROUND

Named plaintiff Ali Karimi and lead plaintiff Yun Wang (together, "Plaintiffs") bring the instant securities class action against Defendants for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17

---

[1]      The Court refers to defendants Cryan, Sewing, Schenck, and Moltke as the "Individual Defendants."

C.F.R. § 240.10b-5.  (D.E. No. 37, Second Amended Complaint ("SAC") ¶¶ 8 & 217–32).

Plaintiffs allegedly purchased Deutsche Bank securities at artificially inflated prices between March 14, 2017, and May 12, 2020 (the "Class Period").  (*Id.* ¶ 1).  Deutsche Bank is headquartered and incorporated in Germany and was "once the world's largest financial institution by assets."  (*Id.* ¶¶ 14 & 34).  It trades on the New York Stock Exchange ("NYSE") under the ticker symbol "DB."  (*Id.* ¶¶ 10 & 14).

The seventy-four-page Second Amended Complaint devotes thirty-six pages to Deutsche Bank's alleged wrongdoings that occurred both prior to and during the Class Period.  (*Id.* ¶¶ 34–135).  Plaintiffs outline, in great detail, the alleged failures and deficiencies in Deutsche Bank's anti-money laundering ("AML") disclosure controls and procedures.  (*See, e.g.*, *id.* ¶ 2).  In sum, Deutsche Bank allegedly failed to conduct due diligence and transaction monitoring to uncover suspicious or unlawful activity, particularly with respect to high-net-worth clients and politically exposed persons ("PEPs") who received preferential treatment, including Jeffery Epstein, "a wealthy American financier . . . [who] engaged in the abuse and sex trafficking of minors" (*id.* ¶ 77; *see id.* ¶¶ 41–43, 55 & 78–102); Igor Putin, "a Russian businessman, politician, and former Vice President of Master Bank, a private bank in Moscow . . . [who] was associated with a number of companies engaged in money laundering" (*id.* ¶ 104; *see id.* ¶¶ 105–08); Roman Abramovich, "an Israeli-Russian billionaire businessman and politician" (*id.* ¶ 109; *see id.* ¶¶ 110–16); "the two [founding] brothers of the Hezbollah terrorist organization" (*id.* ¶ 120; *see id.* ¶¶ 117–19 & 121–22); "a billionaire who was a relative of one of the founders of Al Rajhi Bank in Saudi Arabia, an entity long suspected of financing terrorists" (*id.* ¶ 123; *see id.* ¶ 124); and Germán and José Efromovich, "two billionaire brothers with links to a Mexican drug cartel" (*id.* ¶ 125; *see id.* ¶¶ 126–34).  (*Id.* ¶¶ 38–40, 48 & 103).  Many of the allegations regarding Epstein and his dealings

with Deutsche Bank stem from a July 6, 2020 Consent Order between the New York State Department of Financial Services ("NY DFS") and Deutsche Bank, Deutsche Bank AG New York Branch, and Deutsche Bank Trust Company of the Americas.  (SAC ¶¶ 41, 77–78, 80–81, 83–84, 86–92, 95, 185 & 192 (citing D.E. No. 52-3, Defs. Ex. 1 ("Consent Order"))).

Plaintiffs allege that Defendants made materially false and misleading statements regarding Deutsche Bank's AML procedures, particularly its "robust and strict" Know Your Customer ("KYC") processes.  (*Id.* ¶¶ 4, 135–37, 139–62 & 166–77).  The KYC risk assessment program consisted of—as publicly stated by Deutsche Bank—"strict [client] identification requirements, name screening procedures and the ongoing monitoring and regular review of all existing business relationships" with "[s]pecial safeguards . . . implemented for . . . politically exposed persons." (*Id.* ¶¶ 4, 143, 158 & 173; *see id.* ¶¶ 37–38).  Plaintiffs maintain that Defendants published false and misleading statements on its website from 2017 to 2020, specifically in its annual reports and non-financial reports for years 2016, 2017, 2018, and 2019, its annual financial statements and management report for years 2017 and 2018, and its Forms 20-F filed with the SEC for years 2016, 2017, and 2018.  (*See* SAC ¶¶ 135–76).[2]

The Second Amended Complaint also includes information from eleven confidential witnesses ("CWs") who highlight the purported deficiencies in Deutsche Bank's AML and KYC procedures in addition to its Suspicious Activity Report filings.  (*Id.* ¶¶ 23–33, 49, 51–54, 56–58, 60–69, 85, 87, 93, 100–02, 117–25 & 131–34).  During all relevant times, Deutsche Bank's Management Board oversaw the bank's financial accounting and reporting, risk management, and corporate controls, including its AML controls and KYC procedures.  (*Id.* ¶ 20).  Many of Deutsche Bank's "AML operations are based in Jacksonville, Florida" (*id.* ¶ 94 n.55) and "in 2015 and 2016,

---

[2]      Because the Court finds that transfer is appropriate, it does not reiterate all of Defendants' allegedly false and misleading statements issued during the Class Period.

AML compliance officers in Deutsche Bank's offices in New York and Jacksonville, Florida, [ ] raised many concerns about the work the Bank was doing with Epstein." (*Id.* ¶ 94).

The Individual Defendants are current and former Deutsche Bank executives: John Cryan, former Chairman of the Management Board and Chief Executive Officer ("CEO") from July 2015 to April 2018, who was responsible for Deutsche Bank's Group Audit; Christian Sewing, CEO since April 2018 and member of Deutsche Bank's Management Board; Marcus Schenck, former Chief Financial Officer ("CFO") until June 2017 and member of Deutsche Bank's Management Board since May 2015;[3] and James von Moltke, CFO since July 2017 and member of Deutsche Bank's Management Board. (*Id.* ¶¶ 15–18). The Individual Defendants allegedly had power and authority over Deutsche Bank's SEC filings and its press releases, website statements, and other market communications. (*Id.* ¶ 21). They also had access to material, non-public information. (*Id.*). Accordingly, Plaintiffs maintain that Defendants are responsible for the allegedly false and misleading statements and omissions during the Class Period. (*Id.*).

Defendants move to transfer this action pursuant to 28 U.S.C. § 1404(a), or in the alternative, to dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6). (D.E. No. 52). The motion is fully briefed. (D.E. No. 52-1 ("Mov. Br."); D.E. No. 58 ("Opp. Br."); D.E. No. 62 ("Reply")).

## II.    LEGAL STANDARD

Section 1404(a) permits a district court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer an action to another district "where it might have been brought." 28 U.S.C. § 1404(a)). The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and

---

[3]     The SAC also states that Sewing and Schenck were appointed President of Deutsche Bank's Management Board on the same day—March 5, 2017. (SAC ¶¶ 16–17).

expense." *Kremer v. Lysich*, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (internal quotation marks omitted). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum." *Santi v. Nat'l Bus. Recs. Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Accordingly, in a Section 1404(a) motion to transfer, a court must determine (i) whether the proposed forum is one in which plaintiff could have originally brought suit, and (ii) whether transfer would be in the interest of justice and for the convenience of parties and witnesses. *Id.*

In the Third Circuit, courts do not limit "their consideration to . . . convenience of parties, convenience of witnesses, or interests of justice," but rather analyze all "relevant public and private interests." *Id.* (citing *Jumara*, 55 F.3d at 879). The private interests may include (i) plaintiff's forum preference; (ii) the defendant's preference; (iii) whether the claim arose elsewhere; (iv) the convenience of the parties; (v) the convenience of the witnesses; and (vi) the location of books and records. *Jumara*, 55 F.3d at 879 (citations omitted). The public interests may include (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty in the two fora from court congestion; (iv) the local interest in deciding controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80 (citations omitted). Courts have broad discretion in determining a Section 1404(a) motion to transfer, and are directed to consider "convenience and fairness on a case-by-case basis." *Santi*, 722. F. Supp. 2d at 606; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

## III.   DISCUSSION

As a preliminary matter, the Court must have subject matter jurisdiction over this litigation

and venue must be proper in this District before it may transfer the action pursuant to Section 1404(a).  Subject matter jurisdiction is met here because Plaintiffs bring federal claims under the Exchange Act.  28 U.S.C. § 1331; (SAC ¶¶ 217–32).  There is also no dispute that venue is proper in this District pursuant to the Exchange Act, which also provides for nationwide service of process.  *See* 15 U.S.C. § 78aa; (*see generally* Mov. Br.).

### A.    Whether Venue is Proper in the Southern District of New York

"The first step in a court's analysis of a motion to transfer is to determine whether venue would be proper in the proposed transferee district."  *Church & Dwight v. Mayer Lab'ys, Inc.*, No. 08-5473, 2010 WL 3907038, at *5 (D.N.J. Sept. 28, 2010).  Indeed, Plaintiffs concede that their "securities fraud claims arose at least equally in each jurisdiction in this country," which necessarily includes the Southern District of New York.  (Opp. Br. at 11).

Relevant here,[4] under 15 U.S.C. § 78aa(a), venue is proper in "(1) a district of which the defendant is an inhabitant, (2) a district in which the defendant is found, (3) a district in which the defendant transacts business, or (4) a district wherein any act or transaction constituting the alleged violation of the [ ] Exchange Act occurred."  *CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 645 (D.N.J. 2004) (citing 15 U.S.C. § 78aa(a)).  Defendants argue that the Southern District of New York is a proper forum for this lawsuit because the majority of events

---

[4]      28 U.S.C. § 1391(b) could provide a basis for venue in the Southern District of New York.  However, Defendants do not raise Section 1391 arguments.  (*See generally* Mov. Br.).  Under subsection (b)(2), an action may be brought in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  The acts or omissions that give rise to a claim "must be more than tangentially related to a forum to qualify as 'substantial.'"  *Tang v. Eastman Kodak Co.*, No. 20-10462, 2021 WL 2155057, at *4 (D.N.J. May 27, 2021) (first citing *Dollar Discount Stores of America, Inc. v. Petrusha*, No. 01-0384, 2001 WL 881725, at *1 (E.D. Pa. Apr. 25, 2001); and then citing *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) ("Events or omissions that might only have some tangential connection with the dispute in litigation are not enough.")).  Thus, substantiality focuses on the location of the events that give rise to a particular claim, rather than forum-specific contacts under the separate umbrella of personal jurisdiction.  *Cottman*, 36 F.3d at 295.  Venue in the Southern District of New York arguably would be proper under subsection (b)(2) for substantially the same reasons discussed *infra* under 15 U.S.C. § 78aa(a).

underlying this action occurred in New York and Defendants transact business in New York. (Mov. Br. at 17–18).  The Court agrees.

Many of the allegations regarding Deutsche Bank's relationship with Epstein (*i.e.*, actions that allegedly contradict Deutsche Bank's public statements regarding its AML procedures) are directly from the NY DFS Consent Order with Deutsche Bank.  (SAC ¶¶ 41, 77–78, 80–81, 83–84, 86–92, 95, 185 & 192 (citing Consent Order)).  For example, members of Deutsche Bank's Americas Reputational Risk Committee ("ARRC") had multiple meetings with Epstein in New York.  (*Id.* ¶ 86 (citing Consent Order ¶¶ 36–37) & ¶ 89).  Plaintiff highlights that Stuart Clarke, Chief Operating Officer ("COO") for the Americas and General Manager of Deutsche Bank's New York branch, led one of these meetings and had been accompanied by Jan Ford, Managing Director and Deutsche Bank Americas Head of Compliance.  (*Id.* ¶¶ 89 & 192).  According to a CW, at least one of these meetings defied Deutsche Bank's due diligence policies because no minutes were recorded; allegations against Epstein were not put in writing; and Epstein did not have a lawyer, advisor, or accountant present.  (*See id.* ¶ 87).  Plaintiff also alleges that Deutsche Bank's New York-based AML compliance officers "raised many concerns about the work the Bank was doing with Epstein."  (*Id.* ¶ 94).  And, in the Consent Order, NY DFS found Deutsche Bank in violation of New York Banking Law and New York's Codes, Rules, and Regulations regarding anti-money laundering programs.  (Consent Order ¶¶ 112 & 113 (finding the Bank in violation of N.Y. Banking Law §§ 39 & 44 and N.Y. Comp. Codes R. & Regs. tit. 3, § 116.2)).

In addition, the Second Amended Complaint and documents attached thereto point heavily to Deutsche Bank's activities in New York.  *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be

considered without converting the motion [to dismiss] into one for summary judgment." (internal quotation marks omitted)).  Deutsche Bank trades on the NYSE under the ticker symbol DB.  (SAC ¶¶ 10 & 14).  It admits to "engag[ing] in U.S. banking activities directly through [its] New York branch."  (D.E. No. 52-10, 2019 Form 20-F ("Defs. Ex. 8") at 55 (ECF pagination)).[5]  And, finally, it lists its "agent in the United States" as "DB USA Corporation, c/o Office of the Secretary, 60 Wall Street . . . New York, NY 10005."  (*Id.* at 42 (ECF pagination); D.E. No. 52-6, 2016 Form 20-F ("Defs. Ex. 4") at 41 (ECF pagination)).  Accordingly, venue is proper in the Southern District of New York.

### B.    Private Interest Factors

#### 1.    Plaintiffs' Choice of Forum

Courts typically afford a strong presumption in favor of a plaintiff's choice of forum.  *See, e.g.*, *Windt v. Qwest Comm. Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008).  However, when a plaintiff does not reside in his or her choice of forum, it is afforded less weight.  *See Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295–96 (3d Cir. 2010); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007), and collecting cases in the Third Circuit); *see also In re 3M Co.*, 2020 U.S. App. LEXIS 36961, at *6 (3d Cir. Nov. 18, 2020).  And, "[a]s a general rule, the preferred forum is that which is the center of gravity of the accused activity."  *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998); *see Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988) (noting that a court determines the origin of a claim by looking to the

---

[5]    Although the Class Period ends on May 12, 2020, Plaintiffs do not refer to any alleged misstatements from Deutsche Bank's 2019 Form 20-F filed on March 20, 2020.  (*See* SAC ¶¶ 135–76).  Nevertheless, Plaintiffs squarely refer to and incorporate the Bank's 2019 Form 20-F in its allegation concerning venue.  (*Compare id.* ¶ 10 ("Pursuant to Deutsche Bank's most recent annual report on Form 20-F, as of December 31, 2019, there were 2,066,101,774 of the Bank's ordinary shares outstanding"), *with* Defs. Ex. 8 at 2 (ECF pagination) (indicating "[o]rdinary [s]hares, no par value [of] 2,066,101,774 (as of December 31, 2019)")).  Thus, Plaintiffs do not dispute—nor could they—the Court's consideration of the Bank's 2019 Form 20-F.  (*See generally* Opp. Br.).

"locus of the alleged culpable conduct").   Moreover, a plaintiff's choice of forum "becomes substantially less important [ ] when he sues representatively on behalf of a class." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996) (collecting cases) (quotations omitted); *Gallagher v. Ocular Therapeutix, Inc.*, No. 17-5011, 2017 WL 4882487, at *4 (D.N.J. Oct. 27, 2017) (collecting cases in this District that have afforded less deference to plaintiffs' choice of forum in securities fraud class actions).   "[I]n such actions the participation of the class representative is generally minimal" and "the potential members of the class will likely be scattered across the United States." *Santomenno v. Transamerica Life Ins. Co.*, No. 11-0736, 2012 WL 1113615, at *5 (D.N.J. Mar. 30, 2012) (quotations and citations omitted).

Here, Plaintiffs bring this action on behalf of all persons who purchased or otherwise acquired Deutsche Bank securities during the Class Period.  (SAC at 1 & ¶ 1).  Although Plaintiffs' residences are neither alleged nor proffered in their briefing, Defendants cite to this matter's civil cover sheet that lists named plaintiff Ali Karimi's residence in New Haven County, Connecticut. (Reply at 3 (citing D.E. No. 1-1)).[6]  And, for the reasons discussed *supra* and *infra*, New York appears to be the center of gravity for this action.  Thus, the Court affords little weight to Plaintiffs' choice of forum in the District of New Jersey.  *See e.g.*, *Metro. Life Ins. Co. v. Bank One, N.A.*, No. 03-1882, 2012 WL 4464026, at *5 (D.N.J. Sept. 25, 2012) (affording slight weight to plaintiffs' choice of forum where "nearly all of Credit Suisse's alleged complicity in the fraud occurred in New York").

## 2.    Whether the Claims Arose Elsewhere and Defendants' Preference

Where Plaintiffs' claims arose is most critical to the Court's analysis.  *See id.* at *6.  The inquiry hinges on "which forum contains the center of gravity of the dispute, its events, and

---

[6]      Similarly, it appears that lead plaintiff Yun Wang does not claim to reside in New Jersey.  (Reply at 3; *see generally* Opp. Br.).  The Court's independent review of the docket reflects no indication of Ms. Wang's residence.

transactions." *Id.* (quoting *Park Inn Int'l, L.L.C. v. Mody Enterprises*, 105 F. Supp. 2d 370, 377–78 (D.N.J. 2000)); *Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. 13-5805, 2014 WL 1555133, at *6 (D.N.J. Apr. 14, 2014), *aff'd*, 2014 WL 3748214 (D.N.J. July 29, 2014). "When examining claims for misrepresentation on a motion to transfer venue, misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." *Metro. Life*, 2012 WL 4464026, at *6 (quotations omitted); *see Tang*, 2021 WL 2155057, at *6; *see also Frato v. Swing Staging, Inc.*, No. 10-5198, 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011) (rejecting the argument that plaintiff's fraud claims arose in New Jersey because that is where plaintiff relied on defendants' alleged misrepresentations regarding its financial state).

It is undisputed that none of the Defendants' allegedly false and misleading statements were issued in New Jersey.[7]  (Opp. Br. at 11–12).  Rather, Plaintiffs assert that the statements were issued in Germany and published, albeit equally, in every state throughout the country—including New York and New Jersey.  (*Id.*).  In the same vein, Plaintiffs argue that the NY DFS Consent Order did not resolve the instant securities fraud claims and that the Consent Order allegations cannot be bootstrapped to transfer this action to New York.  (*Id.* at 12).  The Court disagrees.

Although Defendants' allegedly false statements appear to have been disseminated nationwide, Plaintiffs' allegations indicate that the locus of this case is in New York.  The Second Amended Complaint regurgitates the conduct at issue in the Consent Order: Deutsche Bank's alleged violations of its AML and KYC policies and procedures that took place in New York.  The fact that Plaintiffs did not bring this action against two of the named entities in the Consent Order—

---

[7]       In this respect, the instant matter is similar to *In re 3M Co.*, 2020 U.S. App. LEXIS 36961, at *6 (transferring securities class action to the District of Minnesota where "[a]ll but one of th[e] 31 alleged false statements were issued from 3M's headquarters in Minnesota").

Deutsche Bank Trust Company Americas and Deutsche Bank AG New York Branch—is of no moment. (*See* Opp. Br. at 12). Indeed, Plaintiffs admit that many of the Bank's AML compliance officers who raised concerns regarding the conduct outlined in the Consent Order were based in New York offices. (SAC ¶ 94). And, significantly, Plaintiffs allege that the COO for the America's and General Manager of Deutsche Bank's New York Branch chaired a key ARRC meeting with Epstein in which no minutes were taken notwithstanding the Bank's recordkeeping requirement. (*Id.* ¶¶ 86 & 89). Moreover, a member of the ARRC sent an internal email confirming that the committee was "'***comfortable with things continuing' with Epstein***, and that another member of the committee had '***noted a number of sizable deals recently***.'" (*Id.* ¶ 90 (quoting Consent Order ¶ 37)). Thus, the Court disagrees with Plaintiffs' argument that "the Complaint makes crystal clear that all final decisions regarding onboarding and retention of PEPs and other high-net-worth individuals were made by Defendants—all foreign entities and individuals—in Germany." (Opp. Br. at 13).

Nor is the Court persuaded by the barebones allegations that Deutsche Bank maintained an office in Jersey City, New Jersey, or that "upon information and belief" the Bank "and/or an affiliate or subsidiary . . . had multiple offices throughout New Jersey during the Class Period." (SAC ¶ 10; Opp. Br. at 12–13). Even accepting these allegations as true, there is no apparent nexus between Deutsche Bank's New Jersey office location(s) and its allegedly false or material misstatements regarding the Bank's AML and KYC procedures or the conduct that allegedly contravened those policies. Rather, the Consent Order and Deutsche Bank's public filings—which state that it "engage[s] in U.S. banking activities directly through [its] New York branch" (Defs. Ex. 8 at 55 (ECF pagination)), and that its "agent in the United States" is "DB USA Corporation, c/o Office of the Secretary, 60 Wall Street . . . New York, NY 10005" (*id.* at 42 (ECF pagination);

Defs. Ex. 4 at 41 (ECF pagination))—strongly point to New York as the locus of the events underlying this action.  *See Tang*, 2021 WL 2155057, at *6 ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, . . . the defendant's headquarters can be considered the place where events giving rise to the claim occurred." (quoting *Panitch v. Quaker Oats Co.*, No. 16-4586, 2017 WL 1333285, at *6 (E.D. Pa. Apr. 5, 2017)).  For these reasons, this action's center of gravity points more closely to New York than New Jersey.

### 3.       Convenience of the Parties

Next, Plaintiffs argue that the Southern District of New York is no more convenient than this District for the parties.  (Opp. Br. at 13–14).  The convenience of the parties is determined "by their relative physical and financial condition."  *Jumara*, 55 F.3d at 879.  The parties have not argued that they have a physical or financial burden to litigating this action in either New Jersey or New York.  (*See* Mov. Br.; Opp. Br. at 13–14; Reply).  Moreover, other than named plaintiff Ali Karimi and Deutsche Bank, the Court does not know the residences of the remaining parties. Accordingly, the Court finds that this factor is neutral.  *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 219–20 (D.N.J. 2020).

### 4.       Convenience of the Witnesses

Plaintiffs similarly argue that the Southern District of New York is no more convenient than this District for the witnesses and that most witnesses are located in Germany.  (Opp. Br. at 13–14).  The Third Circuit has stated that the witnesses' convenience should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  *Jumara*, 55 F.3d at 879.  There has been no indication that potential witnesses would be completely unavailable to testify in New Jersey or New York.  (*See* Mov. Br.; Pl. Opp.; Reply); *see also Franklin*, 2014 WL 1555133, at *8 (finding the witnesses' convenience neutral because "neither

party was able to offer evidence suggesting that any witness would be unavailable for trial in either forum as opposed to merely being inconvenienced by the distance").[8]  To the extent any witness resides, works, or regularly transacts business within 100 miles of Newark, New Jersey, he or she would be within the Court's subpoena power under Rule 45(c)(1)(A), and travel to this District would not differ significantly from the Southern District of New York.  In the same vein, if any witness resides abroad or outside the Court's subpoena power, travel to this District is comparable to the Southern District of New York.  (*See* Opp. Br. at 14 (conceding that "this factor is at best neutral" as it pertains to witnesses outside this Court's subpoena power)).  Accordingly, the Court finds that this factor is neutral.

### 5.      Access to Proofs

Plaintiff expects that most of the documentary evidence relevant to this action is in Germany.  (*Id.* at 15).  Defendants do not comment on this private interest factor.  (*See generally* Mov. Br.; Reply).  Even assuming that most of the evidence in this action exists in Germany, digitized document discovery would considerably lessen any inconvenience.  *See Santi*, 722 F. Supp. 2d at 608 ("When documents can be transported and/or easily photocopied, their location is entitled to little weight.").  Thus, the Court finds that this factor is neutral.  *See CIBC World Markets*, 309 F. Supp. 2d at 650.

---

[8]      Plaintiffs' argument that Defendants fail to meet their burden by neglecting to file "*affidavits and other documentation* establishing that the interests of justice and convenience of the parties would best be served by a transfer" is unpersuasive.  (*See* Opp. Br. at 10–11).  Defendants rely on Plaintiffs' allegations to support their request for transfer.  And a close reading of Defendants' brief reflects that their argument does not hinge greatly on the convenience of the parties, witnesses, or evidence.  (*See* Mov. Br. at 17–23); *but see Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 & n.2 (3d Cir. 1973) (noting that defendants "did not support their motion to transfer with" documents such as "a list of the names and addresses of witnesses whom the moving party plans to call and affidavits showing the materiality of the matter to which these witnesses will testify, statements by the moving parties of the business difficulties or personal hardships that might result from their having to defend against the suit in the district court where it was originally brought, affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate").  Here, the submissions outlined in *Plum Tree* are not necessary for this Court's determination that transfer is appropriate under the remaining private and public interest factors.

### 6.      Balancing the Private Interests

On balance, the private interest factors would be served by transferring this action to the Southern District of New York.  Plaintiffs' choice of a foreign forum for this class action is entitled to little deference.  Although the Southern District of New York likely poses the same level of convenience with respect to the parties, witnesses, and proofs, the conduct that allegedly rendered Defendants' AML and KYC statements false points to New York—not New Jersey.  *See Frato*, 2011 WL 3625064, at *6.

### C.      Public Interest Factors

The parties dispute the following public interest factors: (i) the practical considerations that could make trial easier, expeditious, or inexpensive; (ii) the local interest in deciding controversies at home; and (iii) the relative administrative difficulty from court congestion in the two fora.

### 1.      Practical Considerations

"Practical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive." *Metro*, 2012 WL 4464026, at *7.  For the reasons discussed above as to the private interest factors, the Court is not persuaded by Defendants' argument that the location of the parties, witnesses, books, and records support the practical considerations under the public interest factors.  (*See* Mov. Br. at 21–22).  However, practical considerations tip in favor of transfer because Defendants' choice of forum "bear[s] the most substantial connection to the events surrounding this case, [and] the District of New Jersey has invested few of its resources to this action," which is in its infancy.  *See Frato*, 2011 WL 3625064, at *7.  Indeed, there have been no court conferences in this case, and there have been no dispositive decisions in this matter. Furthermore, as it relates to this Court's congestion discussed below, expediency favors transfer.

Moreover, Defendants argue that the public interest is served by transfer "to discourage

Plaintiffs' transparent forum shopping." (Mov. Br. at 22).  The Court agrees.  Relevant here, Defendants cite to two securities class actions initiated by Plaintiffs' counsel in the Southern District of New York against Deutsche Bank and various individuals, including John Cryan, Marcus Schenck, and James von Moltke.  *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-3495, 2017 WL 4049253 (S.D.N.Y. June 28, 2017); *Green v. Deutsche Bank Aktiengesellschaft*, No. 18-5104, 2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019).  Defendants' motions to dismiss for failure to state a claim were granted in each action, and the Second Circuit affirmed Judge Torres's decision in *In re Deutsche Bank*.  *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018).  Akin to the instant suit, *In re Deutsche Bank* involved Defendants' allegedly false and misleading statements surrounding the Bank's deficient, ineffective, and poorly managed AML programs, as reflected in its annual reports, financial statements, websites, and Forms 20-F between 2013 and 2016.  2017 WL 4049253, at *3 (reciting plaintiffs' argument, parallel to the instant action, that "[t]hese statements 'falsely and repeatedly reassured investors that the bank had significantly strengthened its internal controls to prevent exactly the type of money laundering that was concurrently occurring via the Russian mirror trades'").  Although *In re Deutsche Bank* did not involve the Bank's alleged oversights with respect to Epstein and others named in the Second Amended Complaint, it dealt with the same overarching structural deficiencies related to the Bank's AML policies and procedures, including the KYC program which is designed "to determine if the [Bank's] 'client[s] had any taint of criminality.'" *Id.* at *2–3.  While the instant case involves a different class period, the Court remains suspect of Plaintiffs' attempt to forum shop following unfavorable Second Circuit precedent in a case involving similar alleged misstatements.  Thus, because the Southern District of New York is familiar with the subject matter of the instant case, this factor favors transfer.  *See Job Haines*, 936

F. Supp. at 234 (indicating that plaintiffs' dissatisfaction in another forum is not considered while a court's familiarity "with the subject matter of an action, and concern about consistent results, most certainly are"); *Friedman v. JPMorgan Chase & Co.*, No. 14-1988, 2015 WL 1003887, at *4 (D.N.J. Mar. 2, 2015) (transferring the action where the transferee district had "developed an expertise and familiarity with the facts and issues of the case" in light of the "'significant' Madoff litigation [that] has taken place in New York").

### 2.    Local Interest

"The public interest factor of the local interest in deciding local issues is intertwined with the private interest factor of where the claim arose." *LG Elecs., Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001).  This is so "because local judges and juries are preferred arbiters of events in their jurisdiction and community." *Id.*

For the reasons discussed above with respect to the New York-based conduct underlying Defendants' alleged misstatements, the Court finds that New York has a stronger local interest in adjudicating this action.  *See Franklin*, 2014 WL 1555133, at *8; *Metro*, 2012 WL 4464026, at *8 ("New York has a compelling interest in adjudicating this controversy and regulating . . . the activities of corporate officers working for corporations which conduct business in that state."); *HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*, No. 07-4390, 2009 WL 2589108, at *4 (D.N.J. Aug. 21, 2009) ("A state has a compelling interest in regulating its businesses or in litigating matters that arise from action occurring within its jurisdiction.").[9]

---

[9]    Plaintiffs argue that if Defendants' allegedly false and misleading statements "were not issued equally from all districts in the United States, they were certainly ***issued from Deutsche Bank's headquarters in Germany*** by the foreign Defendants." (Opp. Br. at 15).  Unlike the cases Plaintiffs cite, however, this Court cannot transfer the action to Germany, a foreign jurisdiction.  (*See id.* at 16).

### 3. Administrative Difficulty from Court Congestion

Defendants argue that court congestion in this District favors transfer to the Southern District of New York. (Mov. Br. at 23). The Court agrees.

Between March 31, 2020, and March 31, 2021, the District of New Jersey had more than double the number of civil case filings than the Southern District of New York.[10] And, in the twelve-month period ending December 31, 2021, this District had 1,302 civil filings per Judgeship compared to 413 civil filings per Judgeship in the Southern District of New York.[11] In light of this District's disproportionate share of cases, civil cases in this District take roughly 43.3 months from filing to trial, approximately six months more than the Southern District of New York. *Id.* Accordingly, this factor weighs in favor of transfer. *See Ponzio*, 447 F. Supp. 3d at 220; *Huang v. Sonus Networks, Inc.*, No. 15-2407, 2016 WL 1090436, at *4 (D.N.J. Mar. 21, 2016).

### 4. Balancing the Public Interests

Overall, the Court concludes that the public interest factors weigh in favor of transfer to the Southern District of New York, given New York's local interest in this action and other practical considerations.[12]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is GRANTED. Because the Court exercises its "broad discretion to determine" that "convenience and fairness considerations

---

[10] *See* Table C–U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2021), https://www.uscourts.gov./statistics/table/c/federal-judicial-caseload-statistics/2021/03/31 (reflecting 26,212 filings in this District compared to 11,592 in the Southern District of New York).

[11] *See* United States District Courts — National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf.

[12] Plaintiffs concede that they would not have a difficult time enforcing a judgment should the matter be transferred. (Opp. Br. at 18–19 (stating that "there is little significant difference in enforcing a judgment in one federal forum than in another" (quoting *E'Cal Corp. v. Off. Max, Inc.*, No. 01-3281, 2001 WL 1167534, at *4 (E.D. Pa. Sept. 7, 2001))). There is no dispute as to either courts' familiarity with federal securities law. (*Id.* at 19).

17

weigh in favor of transfer," it does not address Defendants' motion to dismiss.  *See Jumara*, 55 F.3d at 883.  An appropriate Order accompanies this Opinion.


**Dated:** March 31, 2022                                    *s/Esther Salas*
                                                             **Esther Salas, U.S.D.J.**